(C.D. 3924)

J. E. BERNARD & Co., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 14, 1969)

*Schwartz & Lidstrom* (*Barnes, Richardson & Colburn; Joseph Schwartz;* and *Peter J. Fitch* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Velta A. Melnbrencis,* trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This is an action for refund of customs duties which involves the question as to the proper tariff classification of articles

invoiced as "Magna-Sighters" and "Binocular Magnifiers" that were imported from Japan by Fabricon Company of Chicago, Illinois, between January and April 1967, and entered at Chicago by plaintiff, acting as customs broker.

The articles were classified by the government under item 708.85 of the Tariff Schedules of the United States which provides for "Hand magnifiers, magnifying glasses, loupes, thread counters, and similar articles" and were assessed duty at the rate of 25 percent ad valorem. Plaintiff claims the importations are properly dutiable at 17 percent ad valorem under item 708.45, which provides for "Eyeglasses, lorgnettes, goggles, and similar articles, all the foregoing whether used for corrective, protective, or other purposes * * * Other * * * Valued over $2.50 per doz." We hold that the government's classification is incorrect and that the articles are properly classifiable under item 708.45, as plaintiff claims.

Set out below are the relevant statutory provisions:

Classified under:

| | | |
|---|---|---|
| | Optical appliances and instruments not provided for elsewhere in part 2 of this schedule; frames and mountings for such articles, and parts of such frames and mountings: | |
| 708. 85 | Hand magnifiers, magnifying glasses, loupes, thread counters, and similar articles _____ | 25% ad val. |

Claimed under:

| | | |
|---|---|---|
| | Eyeglasses, lorgnettes, goggles, and similar articles, all the foregoing whether used for corrective, protective, or other purposes; frames and mountings for any of the foregoing, and parts of such frames and mountings: | |
| * * * * * * * | | |
| | Other (except frames and mountings, and parts thereof): | |
| * * * * * * * | | |
| 708. 45 | Valued over $2.50 per doz_____ | 17% ad val. |

The record consists of: the testimony of one witness, the assistant to the president of Fabricon, who was called by plaintiff; a sample of the imported magna-sighter and eight illustrative exhibits—all of which were offered by plaintiff. The sample consists of two lenses mounted in a plastic frame with adjustable straps for fitting the head. The lenses are recessed approximately 1½ inches away from the eyes and magnify the veiw of an object by one and three-quarter times when such object is approximately 14 inches distant from the eyes.

The testimony of plaintiff's witness was to the following effect: Fabricon, the importer of the articles in issue, is in the business of selling by direct mail a home-study course in invisible reweaving—in which connection it sells the magna-sighters to the students of the course. It also sells them to other companies. The articles invoiced as "Binocular Magnifiers" are the same articles as "Magna-Sighters." There are several models of magna-sighters, the only difference between them being the power of magnification.

The witness has seen magna-sighters used in his place of business by individuals doing invisible reweaving. In using these articles, they wear them over their eyes, like eyeglasses, and keep them on throughout the entire reweaving procedure. He stated that the magna-sighter magnifies the field of the work, reduces eyestrain, and keeps extraneous light away from the eyes, thus avoiding fatigue. The witness has personally used the magna-sighter to examine reweaving work which has been returned to his plant for inspection and comment.

In contrast to the magna-sighters, hand magnifiers are held in the hand when an object is viewed through the lens. The witness considers hand magnifiers and magnifying glasses to be the same articles. With respect to loupes, he testified that there are several types.[1] One type is used by placing the open end into the eye socket and holding it in place by squinting action. Another type is used by clamping it on one of the earpiece parts of an eyeglass frame so that it can be swung into and away from the field of vision.

On cross-examination the witness testified that he is not an optician, ophthalmologist or optometrist; that he has used items such as the magna-sighter more than 500 times; that he was speaking partially from personal experience when he stated that it prevents eyestrain; that it prevents eyestrain by magnifying an area of work upon which the user may have to concentrate, and also by protecting the user's eyes from extraneous light; that magnifying glasses also magnify the area to be observed; and that he used goggles for welding about 35 years prior to his testimony—and that such goggles did not magnify anything.

Against this background, plaintiff contends that the government's classification is erroneous and that the magna-sighters are properly classifiable under item 708.45 as articles similar to eyeglasses and goggles. Defendant insists, however, that the magna-sighters were properly classified by the government under item 708.85. It points out that this latter item—708.85—covers magnifying glasses and articles similar to hand magnifiers, magnifying glasses, loupes and

---

[1] Webster's *New International Dictionary* (2d ed. unabridged, 1960) defines a "loupe," as, among other things, a "magnifying glass used by jewelers * * *."

thread counters,[2] and argues that the magna-sighters are either "magnifying glasses"[3] or articles similar to the articles enumerated in item 708.85.

Item 708.45—under which plaintiff claims—provides (as we have seen) for "[e]yeglasses * * * goggles, and *similar articles*, all the foregoing *whether used for corrective, protective, or other purposes* * * *" which are valued over $2.50 per dozen.[4] [Emphasis added.] (Item 708.43 provides for such articles which are valued at not over $2.50 per dozen.) The U. S. Tariff Commission's *Tariff Classification Study, Explanatory and Background Materials, Schedule 7* (Nov. 15, 1960), states the following in regard to items 708.43 and 708.45 (pp. 141-42):

> * * * Items 708.43 through 708.46 embrace spectacles, sun glasses, welding glasses, goggles and the like, whether corrective, protective, or for other use, such as polarizing spectacles for viewing 3-dimensional films. The proposed provisions distinguish corrective from non-corrective articles, thereby providing two new classifications that correspond to two important trade groupings. The three existing value-bracket classifications in paragraph 225 have been merged into two classifications with proposed rates of duty that reflect the ad valorem equivalent of the compound rates or estimated ad valorem equivalents of weighted averages of current rates.

It is thus evident from both the superior heading to item 708.45 and the language just quoted from the *Tariff Classification Study* that that item includes articles other than those specifically named therein. And in that connection, we conclude that the magna-sighters in issue are properly included under this item 708.45 as "similar articles."

The test of similarity is laid down as follows in *Plant Products Corporation* v. *United States*, 44 CCPA 183, 188, C.A.D. 658 (1957):

> In *United States* v. *R. W. Cramer & Co.*, 21 C.C.P.A. (Customs) 379, T.D. 46911, the following definition of "similar" was applied in determining a question of classification:
>
>> Similar. a. 1. Nearly corresponding; resembling in many respects; somewhat like; bearing a general likeness.

---

[2] A thread counter is a magnifying device which is held in the hand close to the eye and is used to count the number of threads per inch in a piece of fabric.

[3] Defendant argues that since the lenses in the imported articles meet the requirements for magnifying glasses, putting them into frames as in the magna-sighter does not change them to something more than magnifying glasses or lenses. We see no merit to this argument. Quite obviously, the lenses in the magna-sighter are no longer merely lenses but have become component parts of a new article. Manifestly, just as no one would think of buying, selling or referring to a pair of spectacles by the name "lenses," so too a magna-sighter no longer responds to the designation "lenses."

[4] It is not disputed that the articles in issue are valued over $2.50 per dozen.

Appellant's brief gives the following additional definitions:

> Similar * * * 1. Nearly corresponding; resembling in many respects; somewhat like; having a general likeness. [Webster's New International Dictionary, 1933 Edition].

> Similar * * * 1. Bearing resemblance to something else, being like in quality, nature, degree, purpose, or other characteristics, but not the same or identical; as, men with similar features. The governments of the thirteen states were all similar, and the political ideas of one were perfectly intelligible to all the others.

The quoted definitions set forth the common or ordinary meaning of the word "similar" which is to be applied in classification cases such as the instant one, but it is clear that they allow a wide range in interpretation. The only thing they establish with certainty is that similar articles must be alike in some respects and different in others. The degree may vary from "resembling in many respects" to being merely "somewhat like" or "like in quality, nature, degree, purpose, or other characteristics." It is evident, therefore, that no hard and fast rule can be laid down, but that the exact degree of likeness required to constitute similarity in any particular case must be a matter of opinion based on consideration of the particular circumstances involved.

In this context, there are several similarities between the magna-sighters and those which are provided for in the headnote to item 708.45. The magna-sighters are worn on the person, over the eyes, as are eyeglasses and goggles. Also, as in the case of eyeglasses and goggles, the magna-sighter need not be held by the user. Further, it has two lenses as do eyeglasses, and it can be used for extended periods of time without being moved or adjusted.

An additional consideration is that when placed over the eyes, the magna-sighter allows the user to see a much larger area than the use of articles such as hand magnifiers, magnifying glasses, loupes, and thread counters where the field of vision is limited to the specific area over which such articles are held. This can be perceived by the use of the hand magnifiers and loupes which are in evidence. Their effective area of use is highly restricted, while that of the magna-sighter, the lorgnette and goggles is much larger. This, of course, is because such latter articles are worn and are applied to the eyes rather than to the object to be viewed. While it is true that loupes are applied to the eye, they must be physically held by the user (usually by insertion in the eye socket and pressure applied by a squinting action) unless they are equipped with some device whereby they can be attached to eyeglasses or a frame of some sort. And although a loupe may have an attaching device, it is also susceptible to use by insertion in the eye socket. Moreover, a loupe is generally considered to be composed of a

single lens,[5] whereas the magna-sighter has two lenses. Lastly, in contrast to the magna-sighter, the area which may be observed through a loupe is highly restricted.

Important to note in considering the thrust of item 708.45 is that the superior heading to that item corresponds to heading 90.04 of the *Brussels Nomenclature*.[6] Heading 90.04 of the *Brussels Nomenclature* (3d Impress., 1964) provides for:

SPECTACLES, PINCE-NEZ, LORGNETTES, GOGGLES AND THE LIKE, CORRECTIVE, PROTECTIVE OR OTHER

The *Explanatory Notes to the Brussels Nomenclature* state the following in regard to this heading (Vol. III, p. 1023):

This heading covers articles (usually comprising a frame or support with lenses or shields of glass or other material) generally intended either to correct certain defects of vision or to protect the eyes against dust, smoke, gas, etc., or dazzle; it also covers spectacles for viewing stereoscopic (three-dimensional) pictures.

Spectacles, pince-nez, lorgnettes, monocles, etc., used for correcting vision, generally have optically worked lenses.

Protective spectacles and goggles generally consist of plane or curved discs of ordinary or optical glass * * * of safety glass, of artificial plastic material (methylacrylate, polystyrene, etc.), of mica, or of metal (wire gauze, or slotted plates). These articles include: sunglasses, spectacles used for mountaineering and winter sports, goggles for airmen, motorists, motorcyclists, chemists, welders, foundry workers, moulders, sand-blast machine operators, electricians, roadmen, quarrymen, etc.

The heading also includes: goggles for underwater use; removable spectacles (e.g., sunglasses) for fitting to other spectacles (generally corrective spectacles) and used either as protective filters or, in some cases, as additional corrective lenses; polarizing spectacles fitted with plastic lenses for viewing three-dimensional films (whether or not with a paper frame).

    *      *      *      *      *      *      *

*Exclusions.* As the heading covers *only* those spectacles, etc., designed to cover the eyes, it *excludes* articles designed to cover or protect most of the face (e.g.: visors for welders; screens and eye-shades for motorcyclists; face masks for underwater swimming).

The heading *also excludes:*

(a) Contact lenses of heading 90.01.
(b) Opera or racing glasses and similar articles, made with spectacle mountings (heading 90.05).

---

[5] See Webster's *New International Dictionary* (2d ed. unabridged, 1960); *Funk & Wagnall's New Standard Dictionary of the English Language* (1948 ed. unabridged).

[6] For an exhaustive discussion on the use of the *Brussels Nomenclature* as a source of legislative history, see the recent opinion of Judge Newman in *W. R. Filbin & Co., Inc.* v. *United States,* 63 Cust. Ct. 200, 208–10, C.D. 3897, slip op. Oct. 9, 1969, pp. 14–18.

(c) Toy spectacles (heading 97.03).

(d) Carnival articles (heading 97.05).

[Emphasis in original.]

On the other hand, the heading of the *Brussels Nomenclature* which corresponds to item 708.85 (under which the magna-sighters were classified by the government) and its superior heading is heading 90.13 which provides for:

OPTICAL APPLIANCES AND INSTRUMENTS (BUT NOT INCLUDING LIGHTING APPLIANCES OTHER THAN SEARCHLIGHTS OR SPOTLIGHTS), NOT FALLING WITHIN ANY OTHER HEADING OF THIS CHAPTER.

The explanatory notes to this heading (*Explanatory Notes to the Brussels Nomenclature* (Vol. III, p. 1037) provide in pertinent part as follows:

> In accordance with Chapter Note 5, measuring or checking optical appliances, instruments and machines are *excluded* from the present heading and fall within *heading 90.16*. Chapter Note 4, however, classifies certain refracting telescopes in the present heading and not in heading 90.05. It should, moreover, be noted that optical instruments and appliances can fall not only in *headings 90.01 to 90.12* but also in *other headings of this Chapter* (*in particular, headings 90.14, 90.17 and 90.25*).
>
> The present heading therefore covers relatively few articles, e.g.:
>
> (1) *Hand magnifying glasses and magnifiers* (e.g., pocket type or those for office use), and thread counters; binocular magnifying glasses (generally on supports) which, unlike stereoscopic microscopes of *heading 90.12*, are fitted with eyepieces but not with an objective.
>
>    *     *     *     *     *     *     *

[Emphasis in original.]

It should be noted that in paragraph numbered (1) which is quoted above, hand magnifying glasses and magnifiers are considered those of the pocket type or those for office use. The "binocular magnifying glasses" referred to in the *Brussels* explanatory notes are those which are "generally on supports and which, unlike *stereoscopic microscopes*, are fitted with eyepieces *but not with an objective*. Presumably, these "binocular magnifying glasses" are among the "similar articles" provided for in item 708.85.

The U.S. Tariff Commission's *Tariff Classification Study, Explanatory and Background Materials, Schedule 7* (Nov. 15, 1960), has the following to say concerning item 708.85 (p. 143):

> Item 708.85, a new provision, covers simple magnifiers and the like currently provided for as microscopes in paragraph 228(b).

This provision separates distinctly different types of articles which under the tariff act are broadly classified as microscopes, from the proposed classification for compound microscopes. The rate of duty proposed is that now applicable to microscopes having a value of less than $25 each; most, if not all, such magnifiers that are now being imported are within that value bracket. * * *

Webster's *New International Dictionary* (2d ed. unabridged, 1960), gives the following definition for "microscope" and "objective":

Microscope:

1. An optical instrument, consisting of a lens, or combination of lenses, for making enlarged or magnified images of minute objects. The *simple* or *single, microscope*, consists merely of a single lens or magnifying glass set in a frame. In this form of instrument the rays of light which enter the eye proceed directly from the object itself. The *compound microscope* requires an *objective* and an *eyepiece*, commonly mounted in a *drawtube*,—accurate focus, in the case of high-power lenses, being attained by a special screw appliance known as the *fine adjustment.* * * * [Emphasis in original.]

Objective, n:

* * * * * * *

6. *Optics.* The lens or system of lenses which forms an image of the object, sometimes on a screen, as in a camera or projector, and sometimes in the focal plane of an eyepiece, as in a telescope, microscope, etc. [Emphasis in original.]

The same source defines "binocular" as:

1. Having two eyes. *Obs.*

2. Pertaining to both eyes; employing both eyes at once; as *binocular* vision. Also, adapted to the use of both eyes; as, a *binocular* microscope or telescope. [Emphasis in original.]

According to the above-cited definitions, the "binocular magnifying glasses (generally on supports)" referred to in the *Brussels* explanatory notes consist of simple or single microscopes which are adapted to the use of both eyes, i.e., the "single lens or magnifying glass set in a frame," as opposed to compound or stereoscopic microscopes which include objectives.

It is evident from what has been said that the imported magnasighter bears a much closer resemblance to the articles described in the superior heading to item 708.45 and those included in heading 90.04 of the *Brussels Nomenclature* than it does to the articles that are enumerated in item 708.85. Furthermore, a physical comparison of the articles involved clearly demonstrates that the magna-sighters more closely resemble eyeglasses and goggles than they do hand magnifiers, magnifying glasses, loupes and thread counters.

While the magna-sighters serve the purpose of magnifying a given area, that purpose does not disqualify them from classification under item 708.45. The headnote preceding that item number specifically states that the use of the articles contained therein (including "similar articles") is not restricted to those purposes which are "corrective" or "protective," but may be for "other purposes." It should be noted that the language does not restrict the use of the "similar" articles to purposes which are "similar" to corrective or protective purposes. Hence, as long as the articles are "similar to" eyeglasses, lorgnettes, or goggles, they qualify for classification under the heading to item 708.45 regardless of the purpose which they serve. The articles in issue being similar to those articles mentioned in the heading to item 708.45, they qualify for classification thereunder.

It is quite true that the magna-sighters are also similar to the articles enumerated in item 708.85 from the single standpoint of being used to magnify objects. But this is too general a "similarity" to dictate classification under the latter item. It is a matter of common knowledge that many articles of commerce are used to magnify objects. This does not mean, however, that they are "similar" to hand magnifiers, magnifying glasses, loupes or thread counters in the sense used in item 708.85. Clearly, the "similarity" required by item 708.85 is something more than the mere capacity to magnify; it means something similar in design, construction, function and use. From that standpoint, the magna-sighter is totally dissimilar to the articles mentioned by name in item 708.85.

The protest is sustained. Judgment will issue to that effect.