ment" under item 734.97 and are properly dutiable at the rate of 18.5 per centum ad valorem.

The protest is consequently sustained and judgment will issue accordingly.

(C.D. 4024)

JOHN H. FAUNCE, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided May 26, 1970)

*Allerton deC. Tompkins* for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Brian S. Goldstein*, trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: The question in this case concerns the proper tariff rate to be imposed on an apparatus known as an "optical diffractom-

eter" that was imported from England in 1965 via the port of New York. It was assessed by the government at 50 percent ad valorem under item 711.86 of the Tariff Schedules of the United States which covers optical instruments or apparatus, and parts thereof.

Plaintiff contends that this assessment is erroneous and claims that the apparatus is dutiable at 22 percent under item 708.78 of the tariff schedules which covers "Electron, proton, and similar microscopes and diffraction apparatus." Alternatively, plaintiff claims (1) that the apparatus is dutiable at 45 percent under item 708.89 as "Other [optical] appliances and instruments"; or (2) at 11.5 percent under item 688.40 as "Electrical articles, and electrical parts of articles, not specially provided for." We hold that the importation was correctly assessed by the government at a 50 percent duty rate under item 711.86.

The relevant provisions of the tariff schedules are, as follows:

Classified under:

Schedule 7, Part 2, Subpart D:

Polarimeters, refractometers, spectrometers, gas analysis apparatus and other instruments or apparatus for physical or chemical analysis; * * *
711.86  Optical instruments or apparatus and parts thereof _____ 50% ad val.

Claimed under:

Schedule 7, Part 2, Subpart A:

Compound optical microscopes; electron, proton, and similar microscopes and diffraction apparatus; * * *
      *    *    *    *    *    *    *
708.78  Electron, proton, and similar microscopes and diffraction apparatus_____ 22% ad val.
      *    *    *    *    *    *    *
Optical appliances and instruments not provided for elsewhere in part 2 of this schedule; * * *
      *    *    *    *    *    *    *
708.89  Other appliances and instruments_____ 45% ad val.

Schedule 6, Part 5:

688.40  Electrical articles, and electrical parts of articles, not specially provided for_____ 11.5% ad val.

Considering first the record, it shows that the purpose of the imported apparatus is to assist in the solution of X-ray diffraction prob-

lems with the objective of deducing the exact arrangement of atoms in a crystal. As the first step in the study, an X-ray diffractometer is employed which shoots X-ray beams at a crystal sample and records on film the scattering or diffraction of such beams after they have passed through the crystal. The film record thus made is called an X-ray diffraction diagram.

The conventional method of deducing the arrangement of the atoms in the crystal is then to make various mathematical calculations from the X-ray diffraction diagram on a trial-and-error basis. These calculations, however, are long and tedious and many trials are often necessary before the exact arrangement of the atoms in the crystal is determined.

The imported apparatus is designed to eliminate these long, tedious calculations. The procedure is as follows: First, holes are punched in a black card or mask, with each hole corresponding to the scientist's estimate of an atomic position in the crystal being examined—which estimate is based on the scientist's study and interpretation of the information contained in the X-ray diffraction diagram. Next, the mask of holes is placed in the imported apparatus which in turn produces a diffraction diagram by the use of light rays. If the diffraction diagram so produced is identical with the X-ray diffraction diagram, then the holes in that particular mask correctly depict the structural arrangement of the atoms within the crystal. On the other hand, if the diffraction diagram produced by the imported apparatus is dissimilar to the X-ray diffraction diagram, the holes in that mask do not correctly depict the crystal's atomic structure. In that circumstance, a new mask with holes differently placed must be made in order to achieve a diffraction diagram identical with the X-ray diffraction diagram.

Specifically, the imported apparatus operates in the following manner: Light from a 210-watt mercury vapor lamp is directed by means of a prism and lens through a monochromatic light filter on to a pinhole which is at the focus of a second of the apparatus' lenses. The parallel beam so produced is brought to a focus in the focal plane by a third lens, after reflection from an optically flat mirror. A mask placed between the second and third lenses produces diffracted beams which converge at different points in the plane to form an image—the so-called Fraunhofer diffraction pattern—which may be observed with a microscope, recorded photographically or detected by a television camera tube.

In this setting, plaintiff argues that the imported apparatus was erroneously classified under item 711.86 covering "Optical instruments

or apparatus, * * *,"[1] on the ground that it does not fall within the category of articles described in the superior heading of item 711.86.[2] We do not agree. For, in our view, the importation is clearly an "apparatus for physical or chemical analysis" within the meaning of the superior heading. Directly in point in *Burrows Equipment Company* v. *United States*, 62 Cust. Ct. 681, C.D. 3848, 300 F. Supp. 455 (1969), where the common meaning of the term "chemical analysis," as used in this same superior heading, was considered. There we held that certain articles known as "vitascopes" that were used in determining the germination factor in seeds by a staining process were properly classified under item 711.88 as instruments "for physical or chemical analysis." We stated that "an instrument or apparatus *is included* within the common meaning of the term 'chemical analysis' if it determines one or more ingredients of a substance either as to kind or amount; or if it performs a detailed examination of a complex chemical substance for the purpose of enabling one to understand its nature or to determine an essential feature; or if it determines what elements are present in a chemical substance." 62 Cust. Ct. at 685; 300 F. Supp. at 458. In reaching this conclusion, we relied upon the following dictionary definitions of the word "analysis" (62 Cust. Ct. at 684–85; 300 F. Supp. at 457):

> *Webster's New International Dictionary* (2d ed.) 1960—
> *analysis* * * * 1. Separation of anything, whether an object of the senses or of the intellect, into constituent parts or elements. * * * 4. *Chem.* a. The separation of compound substances, by chemical processes, into their components. b. *The determination,* which may or may not involve actual separation, *of one or more ingredients of a substance either as to kind or amount.* [Emphasis added in part.]
>
> *Funk & Wagnalls New Standard Dictionary of the English Language*—
> *analysis,* 1. the resolution of a compound into its parts or elements; the act of ascertaining, separating, or unfolding in order, the elements of a complex body, substance, or treatise * * * *Chemical analysis* is either (1) qualitative * * * or (2) quantitative * * * *Physical analysis* is the resolution of any physical object or substance into its parts * * * *qualitative* a., *the process in chemistry of finding out* how many and *what elements are present—quantitative* a., the process of finding the bulk or amount of each element present.* * * [Emphasis added in part.]

\*    \*    \*    \*    \*    \*    \*

[1] The term "optical instruments" is defined in headnote 3, part 2, schedule 7, as embracing "only instruments which incorporate one or more optical elements, but does not include any instrument in which the incorporated optical element or elements are solely for viewing a scale or for some other subsidiary purpose." Plaintiff concedes that the imported apparatus is an "optical instrument" as so defined.

[2] In this connection, General Interpretative Rule 10(c)(i) provides that "a superior heading cannot be enlarged by inferior headings intended under it * * *."

*Webster's Third New International Dictionary of the English Language* (1963 ed.), pp. * * * 77:

\* \* \* \* \* \* \*

analysis n. * * * 2 a: a detailed examination of anything complex * * * made in order to *understand its nature or to determine its essential features* * * * 4 [*chem*] a: the separation of compound substances into their constituents by *chemical processes* b: *the determination* which may or may not involve actual separation, *of one or more ingredients of a substance either as to kind or amount* * * * [Emphasis added.]

In the present case, the record shows that the imported apparatus is used in the area of physical chemistry known as crystallography, or structure determination, to determine the atomic structure of crystals. This is to say that through the use of the imported apparatus, a detailed examination of the crystal takes place which enables the scientist to understand its essential features and to obtain much valuable information concerning other physical and chemical properties.[3] We hold, in short, that the importation is an instrument or apparatus for physical or chemical analysis within the meaning of the superior heading of item 711.86.

Plaintiff further argues that even if the importation comes within the purview of item 711.86 as an optical instrument, it is also described—and more specifically—in item 708.78 which (as we have seen) covers "Electron, proton, and similar microscopes and diffraction apparatus." Again we do not agree. For on the basis of the facts before us, there is no similarity between the imported optical diffractometer and electron or proton diffraction apparatus. On this aspect, the record shows that ordinarily an electron diffractometer [4] is incorporated into an electron microscope as a single unit. In this unit, the electron microscope is used to view small objects such as crystals, and then is switched over to the electron diffraction apparatus. The apparatus operates by means of an electronic gun which shoots a beam of electrons at a crystal sample and produces an electron diffraction diagram which is similar to the X-ray diffraction diagram obtained from X-rays striking a crystal. While the theory of the procedures utilized in light and electron diffraction is similar (except for a difference in the wave lengths), there are basic differences in design, construction and operation of the equipment therefor. First, the electron diffractometer utilizes a magnetic lens, whereas the light diffractometer uses an optical lens. Second, the electron diffractometer

---

[3] We note, also, (i) that plaintiff's expert witness testified that the imported apparatus, in conjunction with the human factor, performed an analysis; and (ii) that the trade literature describes the apparatus as one *"for crystal structure analysis* and other research application." [Emphasis added.]

[4] The term "electron," as used here, refers also to "proton."

operates in a vacuum, while the light diffractometer operates in normal atmosphere. Third, the electron diffractometer uses samples of actual crystals, while the light diffractometer uses a mask of holes with the holes designed to depict the crystal's atomic structure. Fourth, the electron diffractometer, in contrast to the light diffractometer, does not require an X-ray diffraction diagram as a point of reference. These considerations make it clear that in design, construction, function and use, the light diffractometer is not similar to the electron diffractometer. See e.g., *J. E. Bernard & Co., Inc.* v. *United States*, 63 Cust. Ct. 390, C.D. 3924 (1969).

Moreover, the statutory scheme itself makes it evident that optical diffraction apparatus is not "similar" for tariff purposes to electron diffraction apparatus. For example, in the case of microscopes, Congress provided in item 708.78 for "Electron, proton, and *similar* microscopes * * *." [Emphasis added.] However, optical microscopes are specifically covered by items 708.71 – 708.76—which demonstrates that Congress did not intend their inclusion within item 708.78 as "similar" to electron or proton microscopes. And by a parity of reasoning, if optical microscopes are not within the purview of item 708.78, then by the same token optical diffraction instruments are not within the class of "similar" articles included within that provision. See also *Tariff Classification Study* (1960), Schedule 7, Part 2, p. 143; *The Explanatory Notes to the Brussels Nomenclature* (1955), Vol. III, heading 90.11, p. 1034.

Finally, with regard to plaintiff's alternative claims under items 708.89 and 688.40, it is obvious that item 711.86—under which the importations were classified by the government—is a more specific provision.

The protest is overruled and judgment will be entered accordingly.