(C.D. 4744)

E. M. LABORATORIES, INC. *v.* UNITED STATES

Court No. 76–7–01689

(Decided May 26, 1978)

*Donohue and Donohue* (*James A. Geraghty* and *Joseph F. Donohue* of counsel) for the plaintiff.

*Barbara Allen Babcock*, Assistant Attorney General (*Jerry P. Wiskin*, trial attorney), for the defendant.

BOE, Judge: The merchandise in question in the above-entitled action, more particularly described as thin layer chromatography plates, was imported by the plaintiff from West Germany and entered at the port of New York between December 1973 and October 1974.

Upon liquidation, the merchandise was classified under item 547.55, TSUS, as modified by Presidential Proclamation 3822, providing:

Schedule 5, Part 3
Subpart C headnotes:

\* \* \* \* \* \* \*

2. The provisions in this subpart for laboratory glassware (items 547.53 and 547.55) include laboratory apparatus or instruments which are essentially glassware whether or not furnished with supports, frames, or mounts of other materials.

\* \* \* \* \* \* \*

Pharmaceutical, hygienic, and laboratory glassware, whether or not graduated or calibrated:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 547.55 | Other_____ | 21% ad val. |

The plaintiff, however, contends that said merchandise is properly classified under item 711.88, TSUS, as modified by Presidential Proclamation 3822, providing:

Schedule 7, Part 2
        Part 2 headnotes:
                1. This part does not cover—

                *       *       *       *       *       *       *

                        (iii) pharmaceutical, hygienic, and laboratory glassware (see part 3C of schedule 5);

                *       *       *       *       *       *       *

                Subpart D. – Measuring, Testing, and Controlling Instruments

                *       *       *       *       *       *       *

        Polarimeters, refractometers, spectrometers, gas analysis apparatus and other instruments or apparatus for physical or chemical analysis; * * *:

                *       *       *       *       *       *       *

711.88          Other_____ 11% ad val.

The imported articles of merchandise in question are commonly referred to as TLC plates. Each plate consisted of a sheet of plain, ordinary glass to which a silica gel adsorbent layer was affixed and bound by means of a special patented binder process.

Chromatography is defined as a technical procedure of analysis causing a separation and fractionation of materials or substances, whether gas, liquid or solid. This analytical process consists of two principal methods generally referred to as liquid chromatography and gas chromatography. In the former method the analysis is made by the dissolution of the unknown substance; in the latter method the analysis is made by evaporation and distillation. Under the general classification of liquid chromatography, thin layer chromatography is one of several methods of analysis. The thin layer chromatography process should be briefly described for the purpose of relating the function of the TLC plate therewith.

The proper adsorbent medium is affixed and bound to a plate or mount which may consist of glass, plastic, aluminum or steel.[1] A substance sought to be chemically analyzed and determined is applied in a series of spots on the adsorbent layer of the TLC plate. The TLC plate thereupon is placed in a jar or vessel containing a developing solvent. As the solvent rises through the adsorbent layer

---

[1] Silica gel and alumina are examples of commonly used adsorbents. These adsorbents may be impregnated with additional substances such as silver nitrate when required for a specific analysis.

bound to the plate, the substance sought to be chemically analyzed is broken down into its components elements. Upon drying, the plate and the substances originally placed thereon for analytical purposes may be treated by the use of dyes and other solutions, as well as by light rays, thereby permitting an identification of the separated substances and their component elements.[2]

It is undisputed and acknowledged that a TLC plate is an instrument used exclusively for laboratory purposes. It must likewise be acknowledged that quantitatively a TLC plate, as an instrument, contains a greater percentage of glass in comparison to the adsorbent layer of the substance and/or materials with which it is combined.

Headnote 2, subpart C, part 3, schedule 5 of the Tariff Schedules of the United States in specifying certain articles within the definition of "laboratory glassware" includes "laboratory apparatus or instruments which are essentially glassware whether or not furnished with supports, frames, or mounts of other materials." Relying, however, upon the foregoing headnote, the defendant contends that because a TLC plate is used in the laboratory and is "essentially" glass, the article accordingly is "laboratory glassware" within the purview of item 547.55, TSUS. It is the opinion of the court, however, that to accept this questionable sophistic reasoning of the defendant is to ignore the intent of the Congress in the general classification of Glass and Glass Products under part 3, schedule 5, TSUS, and the more specific subordinate classification, subpart C, thereunder.

Headnote 2 under subpart C, by way of explanation, advises that the generic classification, "laboratory glassware," includes "laboratory apparatus or instruments which are essentially glassware." The intent of Congress expressed therein is to assure that not only "laboratory apparatus and instruments" wholly made of glass are to be classified under subpart C and more specifically items 547.53 and 547.55, but that "laboratory apparatus and instruments essentially made of glass" likewise are to be classified thereunder. The headnote does not define "laboratory glassware" nor indicate its nature or type of use in the laboratory. Inasmuch as the tariff schedules include glass instruments and apparatus also used in the laboratory under differing classifications, it falls upon the court to determine the character of the glassware instruments and their use in the laboratory as contemplated by the statutory term "laboratory glassware."

Absent a more precise definition of the common meaning of "laboratory glassware," other than the broad inclusionary reference made in headnote 2, subpart C, and in view of the uncertain and ambiguous meaning of the term, it is proper that reference be made to historical

---

[2] See also Van Nostrand's Scientific Encyclopedia, 4th ed., on the subject of chromatography, pp. 342-346 (1968).

and explanatory sources in order to ascertain the congressional intent in the use of the term. *Rifkin Textiles Corp.* v. *United States*, 54 CCPA 138, C.A.D. 925, *cert. denied*, 389 U.S. 931 (1967). In the *Summaries of Tariff Information*, United States Tariff Commission, Vol. 2 (1948), a description and use of "laboratory glassware," as provided for in paragraph 218(a) of the Tariff Act of 1930, the predecessor of item 547.55 TSUS, is more definitively provided:

> *Description and uses.*—This summary covers glassware used chiefly for laboratory and scientific purposes. The number and variety of such glassware articles is large; typical items are beakers, flasks, graduates, thermometers, condensers, and syringes. The ware is made largely of borosilicate glass, which is highly resistant to temperature changes and the dissolving action of chemical solutions. Ware that is not exposed to temperature shock or to corrosive chemicals is made of hard soda-lime glass or, in some instances, of soft lead glass...
>
> *     *     *     *     *     *     *
>
> [S]ome of the items imported supplemented domestic production, such as thermometers, culture dishes, and microscope slides and covers—items which are comparatively inexpensive *but which have to be made under rather close tolerances.* * * * *Id.* part 2, at 19. [Emphasis added.]

*Summaries of Trade and Tariff Information*, United States Tariff Commission (1968), relating to laboratory glassware as classified under item 547.55, TSUS, provides the following descriptive comments:

> Laboratory glassware includes a wide variety of glass articles designed for laboratory, industrial, pharmaceutical, or hygienic applications. Most of these articles are made from borosilicate glass which is more resistant to shock than is soda-lime glass. Soda-lime glass is used only where shock resistance is not an important factor.
>
> Laboratory glassware has several different types of users including schools, hospitals, industrial laboratories, and medical and scientific research institutions. Nearly all of these institutions and firms demand high quality precision ware, often on short notice and, with few exceptions, only the domestic glassware industry is in a position to supply them. [Schedule 5, Volume 4, pp. 29–30.]

The educational background of Dr. Martin Gurkin, witness for the plaintiff, as well as his professional experience as a chemist, clinical scientist and director of laboratory technical services, qualifies the admission of his opinion in evidence with respect to the common meaning of "laboratory glassware" in the scientific community. As illustrative of articles in this classification, he specifically referred to glassware such as graduated cylinders, beakers, microscopic slides. In referring to a common characteristic of "laboratory glassware," namely its resistance to heat and to chemical and caustic substances, he testified that the glass mounting of the TLC plate to which the

adsorbent layer of silica gel had been bound possessed no such characteristics.

"It is a well-established principle that classification of an imported article must rest upon its condition as imported." *The Carrington Co. et al. v. United States,* 61 CCPA 77, 81, C.A.D. 1126, 497 F. 2d 902 (1974); *United States v. Citroen,* 223 U.S. 407 (1912). An examination of Exhibit 1, a representative sample of a TLC plate imported by the plaintiff, as well as the testimony introduced by the plaintiff relating to its composition and condition at the time of importation, is supportive of the contention of the plaintiff that the merchandise in issue (TLC plate) is not "laboratory glassware" within the intent and purview of item 547.55, TSUS. The evidence indicates without contradiction that the glass mounting of the TLC plate in issue consists of plain glass which has undergone no special processing. The glass serves no other purpose than as a mount to which the silica gel adsorbent layer is affixed and bound. It is fragile and easily breakable. Its lack of resistance to heat can cause it to crack readily in the same manner as ordinary window glass. Although plaintiff's witness testified that in the production of a TLC plate, glass in many instances is preferred as a mounting or plate to which an adsorbent layer is bound, such a choice or preference is directly related to the circumstances surrounding the desired or required use of the particular TLC plate. Thus, if fragility of the plate is a characteristic which is sought to be obviated, a steel, an aluminum or a plastic mount might be preferred.

The defendant in support of the classification determined by the Regional Commissioner of Customs urges that the phrase "essentially glassware" contained in headnote 2, subpart C requires that the TLC plate be characterized as "laboratory glassware" within the purview of item 547.55, TSUS. The fallacy in the defendant's contention, however, lies in the fact that in the instant proceeding, we are considering the classification of an instrument as imported, the use of which is for a specific purpose other than and far different from the purpose and use of the "laboratory glassware" referred to in headnote 2, subpart C and the appropriate tariff items named therein. In the classification of the subject merchandise, to adopt a test or standard predicated upon the fact as to whether a TLC plate is *principally* comprised of glass or whether glass is *essential* to the manufacture and production of the plate is inappropriate.

It appears to the court that whether the glass mounting is "laboratory glassware," whether the mounting consists of ordinary, plain glass, whether a TLC plate quantitatively consists of a greater proportion of glass as compared to other substances and materials combined therewith, or whether glass of any character or description may

be "essential" and/or required for the mounting are questions which are not determinative in the classification of the merchandise in issue.

In this connection the legislative history relating to the Tariff Schedules of the United States and, in particular, items 547.53 and 547.55, again is of interest. Referring to the aforementioned items, the following explanatory notes are contained in the *Tariff Classification Study*, schedule 5, part 3 (1960), at 145:

> Items 547.53 and 547.55—These articles are currently provided for in paragraph 218(a). The proposed provisions reflect the existing rates of duty for the two types of glasses. The current provisions of paragraph 218(a), however, cover a number of glass instruments that in the proposed schedules are provided for in part 2 of schedule 7. These instruments include thermometers, hydrometers, syringes, and similar articles. *Also, part 2 of schedule 7 covers articles of laboratory glassware that have been permanently combined with other materials to form an instruments [sic] for specific purposes.* [Emphasis added.]

From the foregoing, it is evident that it was the intent of Congress to exclude certain "laboratory glassware" from the general tariff schedules relating thereto and to place them under a classification pertaining to specific and definitive purposes (part 2, schedule 7, TSUS). As will be noted from the above-quoted comment, before "laboratory glassware" is deemed to be excluded from schedule 5, part 3, items 547.53 and 547.55 thereunder, the glassware must have been "permanently combined with other materials *to form an instrument for specific purposes.*" (Emphasis supplied.)

An examination of Exhibit 1 reveals that the silica gel adsorbent layer has been firmly affixed and bonded to the glass plate mounting. This "binding process" to the plate or mounting is patented and is a trade secret. Eighty percent (80%) of the cost of the TLC plates as imported is due to the manufacture, processing, packing and quality control of the merchandise in issue. Precision is of prime importance in the production of the TLC plates so as to properly control the particle size, particle distribution, and pore size of the silica gel, which, in turn, gives to the substance and material its "surface activity." As the witness for the plaintiff, Dr. Martin Gurkin, testified, it is the silica gel adsorbent layer on the glass mounting which causes it to be an article of commerce.

The defendant, however, contends that the classification of the TLC plates under item 711.88, TSUS, is precluded because headnote 1(iii) under part 2, schedule 7 provides that part 2 does not cover "pharmaceutical, hygienic, and laboratory glassware." This contention is without merit. It is clear from the *Tariff Classification Study* that part 2 of schedule 7 does include articles, glassware or otherwise, which have been permanently combined with other materials to form instruments for specific scientific and analytical purposes.

In this regard, the defendant urges that the combination or binding of the silica gel adsorbent layer to the glass mounting of a TLC plate is not permanent. In support of its contention, defendant points to the testimony of Dr. Gurkin, who on cross-examination, testified that it was "conceivable" that the merchandise in issue after usage could be "scraped" and resurfaced with a silica gel adsorbent layer.[3]

The interpretation of a given word must be made in the proper context in which it is used. Indeed, the term "permanently" under certain circumstances may bear the synonymous meaning of "perpetual" or "everlasting." However, to here invoke such a synonymous definition, as suggested by the defendant, does not properly construe the intent of the explanatory comment in the *Tariff Classification Study* aforereferred to. The phrase "permanently combined" is more properly used in the sense of describing the "steadfast," "long-lasting" and "continuing" characteristics of the adsorbent materials and the article of glassware which have been combined.[4] From all of the evidence adduced, as well as from an examination of Exhibit 1, it appears that the silica gel adsorbent layer remained firmly "bound" and/or "combined" to the glass mounting from the time of its manufacture, throughout the period of its importation into the United States, throughout the period of its transportation within the arteries of domestic commerce, and throughout the period of its ultimate use in a laboratory for chemical analysis purposes. No evidence has been adduced that the adsorbent layer is removed from the plate as a result of the chromatography testing process. On the contrary, defendant's cross-examination of plaintiff's witness, as aforereferred to, dwelled upon the possibility of "scraping" the adsorbent layer from the plate *after* its use as an analytical instrument. It is difficult for the court to visualize to what extent a more "permanent combination" might be contemplated than for the intended life of the testing instrument itself.

At the time of importation, the merchandise in issue consisted of a plate of glass, which, irrespective of its original individual classification, had been permanently combined with other materials to form a new and distinctive instrument, undisputedly designed for chemical analysis purposes. This article, whether the mounting consisted of glass, aluminum, plastic or steel, when combined with an appropriate adsorbent layer assumed a specific identity designed only for a single purpose—an instrument for chemical analysis in the thin layer chromatography process. As our appellate court has stated in the case of

---

[3] Dr. Gurkin testified : "It's conceivable but I never heard anyone doing it." (R. 72.)

[4] *Roget's International Thesaurus,* 3d ed., p. 50, 110.10 (1962).

*United States* v. *F. B. Vandergrift & Co., Inc.*, 44 CCPA 15, 17, C.A.D. 628 (1956):

> * * * where, as here, an article is designed and manufactured with a single purpose in mind and is made to specifications which peculiarly adapt it to that purpose, it is properly considered to be dedicated to that purpose * * *.

The court, accordingly, finds that the plaintiff has sustained its dual burden of proof in establishing that the liquidated classification of the merchandise in issue by the Regional Commissioner of Customs under item 547.55, TSUS, was in error and incorrect and that the claimed classification with respect to such merchandise under item 711.88, TSUS, is correct and proper.

Let judgment be entered accordingly.