PHARMACIA FINE CHEMICALS, INC., PLAINTIFFS v. UNITED STATES, DEFENDANT

Court No. 77–7–01188

Before DiCARLO, *Judge.*

(Decided September 4, 1985)

*Freeman, Wasserman & Schneider* (*Louis Schneider, Angela P. Violin* and *Patrick C. Reed*) for the plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office (*Jerry P. Wiskin*) for the defendant.

DiCARLO, *Judge:* Plaintiff challenges the United States Customs Service's (Customs) classification of articles invoiced as "columns", "adaptors", "reservoirs", "tubing connectors", and "fraction collectors" imported from Sweden.

Customs classified the merchandise under item 711.88, Tariff Schedules of the United States (TSUS), as "instruments or apparatus for physical or chemical analysis" at a rate of duty of 11 percent *ad valorem.*[1]

Plaintiff claims all the merchandise is properly classifiable as "filtering and purifying * * * apparatus * * * for liquids" under item 661.95, TSUS, at a rate of duty of 5.5 percent *ad valorem.*[2]

Since an item is not classifiable under item 661.95, TSUS, if it is specifically provided for elsewhere,[3] the question before the Court is whether the merchandise is specifically provided for by item 711.88, TSUS, or another provision of the tariff schedules.

The Court holds that the merchandise is not specifically described by item 711.88, TSUS, and is classifiable under item 661.95, TSUS, as "filtering and purifying * * * apparatus * * * for liquids."

In interpreting a provision in the tariff schedules, "a designation by use may be established, although the word "use" or "used" does not appear in the language of the statute. *E.C. Lineiro* v. *United States,* 37 CCPA 10, 14, C.A.D. 411 (1949). *See United States* v.

---

[1] Some of the columns and adaptors were classified under item 680.22, TSUS, as "valves", at a rate of duty of 11 percent *ad valorem.* Defendant concedes that this classification was incorrect, and now claims that all the merchandise is classifiable under item 711.88 STUS, or, alternatively, under item 774.60, TSUS, as "Articles not specially provided for, of rubber or plastics: * * * Other" at a rate of duty of 8.5% *ad valorem.*

[2] Alternatively, plaintiff claims that the fraction collectors are properly classifiable under item 688.40, TSUS, as an "electrical article not specially provided for" at a rate of duty of 5.5 percent *ad valorem,* and that the other merchandise is properly classifiable under item 774.60, TSUS.

[3] Headnote 1(v), Part 4, Schedule 6, TSUS, provides that:

1. This part does not cover—

*     *     *     *     *     *     *

(v) Articles and parts of articles specifically provided for elsewhere in the schedules.

*Hillier's Son Co.,* 14 Cust. Ct. App. 216, 222 (1926), (use test applied to provision for "medicinal preparations"); D. Serko, *Import Practice: Customs and International Trade Law* 51–52 (1985).

Both item 661.95, TSUS, and item 711.88, TSUS, are use provisions. *See Noss Co. v. United States,* 7 CIT 111, 116, 588 F. Supp. 1408, 1412 (1984), *aff'd* 753 F.2d 1052 (Fed. Cir. 1985) (instrument used for purification classifiable under item 661.95, TSUS).

The parties stipulate that the articles are chiefly used for filtering or purifying liquids,[4] and the Court finds that the articles are so used.[5]

Persuasive indication that Congress considered the merchandise provided for in item 661.95, TSUS may be found in the Brussels Nomenclature.[6] Heading 84.18 of the Brussels Nomenclature[7] is virtually identical to item 661.95, TSUS, while Heading 90.25[8] differs from item 711.88, TSUS, only in the order of the words. Articles covered by Heading 84.18 include:

> filters and purifiers of all types (* * * chemcial * * * etc.)
> * * *
>
> The liquid filters of this group separate solid, fatty colloidal, etc., particles from a liquid, for example, by passing it through a sheet, membrane or mass or porus material * * *
> It includes, *inter alia*:
> (1) Domestic type water filters * * *

\*      \*      \*      \*      \*      \*      \*

---

[4] Pretrial Order, Schedule C, § 8. The parties also agree that all the merchandise except the fraction collectors are in chief value of plastics. *Id.*

The columns, which are imported in models differing mainly in diameter and length, are plastic tubes, fitted with supports to contain a chromatographic media, that separate liquid mixtures passed through them. Adaptors are inserted in the top part of the columns so that the entering liquids are distributed evenly on the surface of the media inside the columns. Reservoirs contain the mixtures which run through the columns for separation; tubing connectors connect the columns and reservoirs; fraction collectors collect the separated liquids.

[5] At trial, plaintiff's expert, Dr. Leslie C. Beadling, testified that 99.5% of the use of articles is for purification and separation of materials. Dr. Fred E. Regnier, plaintiff's other expert, testified that a review by computer of scientific literature indicted that 90% of the use of the merchandise was "in the preparation process where * * * the whole objective of running material through the columns is to ultimately get something pure in your hands." Transcript, at 130. Mr. Walter A. Svec, defendant's expert, concluded that Dr. Regnier's study reflected actual use of the merchandise. A regional sales manager for plaintiff, Ronald Goldberg, testified that his customers use the columns to accumulate purified materials for further use.

[6] Customs Co-Operation Council, *Nomenclature for the Classification of Goods in Customs Tariffs* (1955) (Brussels Nomenclature), and *Nomenclature-Explanatory Notes* (2d ed. 1966) (*Explanatory Notes*). The Brussels Nomenclature was put forth by the Customs Cooperation Council, an international organization, for adoption by its member nations, with the idea that their tariff items might be made uniform in phraseology, even if the rates were different and this phraseology, becoming familiar, would help trade by reducing the uncertainty of exporters as to how their exports would fare with the customs of trading partners.

*F.L. Smidth & Co. v. United States,* 409 F.2d 1369, 1375 (C.C.P.A. 1969). *See Jarvis Clark Co. v. United States,* 733 F.2d 873, 875 n.2 *reh'g denied,* 739 F.2d 628 (Fed. Cir. 1984).

The Brussels Nomenclature influenced by the U.S. Tariff Commission during the drafting of the Tariff Schedules, *see Tariff Classification Study Submitting Report* 8 (1960), and "courts and Congress recognize that the [Brussels Nomenclature] is a highly probative source for ascertaining legislative intent, especially where the languages of the TSUS and Brussels are similar." *Toyota Motor Sales, U.S.A., Inc. v. United States,* 7 CIT 178, 185, 585 F. Supp. 649, 655 (1984), *aff'd,* 753 F.2d 1061 (Fed. Cir. 1985); *see, e.g., Karoware, Inc. v. United States,* 65 CCPA 1, 6, C.A.D. 1197, 564 F.2d 77, 82 (1977).

[7] Heading 84.18 of the Brussels Nomenclature provides for centrifuges; filtering and purifying machinery and apparatus (other than filter funnels, milk strainers and the like), for liquids or gases.

[8] Heading 90.25 of the Brussels Nomenclature includes: Instruments and apparatus for physical or chemcial analysis (such as polarimeters, refractometers, spectometers, gas analysis apparatus) * * *

(8) Chemical water purifiers, e.g., permutite or zeolite softeners and lime water purifiers.[9]

By contrast, all the instruments and apparatus described in the *Explanatory Notes* as covered by Heading 90.25 do more than separate materials. *See* 4 *Explanatory Notes, supra,* 1613–1619.

Thus, the *Explanatory Notes* suggest that the merchandise is within the provisions of Heading 84.18—and therefore that Congress intended that it be classifiable under item 661.95, TSUS—and not within Heading 90.25, which corresponds to item 711.88, TSUS.

Defendant claims, citing lexicographic sources, that an instrument or apparatus which separates a material into component parts performs "chemical analysis" and is specifically provided for under item 711.88, TSUS. The Court finds that the merchandise which merely separates materials to obtain a purified substance is not within the commercial meaning of "apparatus for chemical analysis".[10] This view is consistent with the Congressional intent, as evidenced by the Brussels Nomenclature discussed *supra,* and previous judicial interpretations of item 711.88, TSUS.

In *Burrows Equipment Co.* v. *United States,* 62 Cust. Ct. 681, C.D. 3848, 300 F.Supp. 455 (1969), the Court held that instruments which determined the germinating capacity of seeds were classifiable under item 711.88, TSUS. The Court held that for purposes of item 711.88, TSUS, an instrument or apparatus is included within the common meaning of the term "chemical analysis",

> If it determines one or more ingredients of a substance either as to kind or amount; or if it performs a detailed examination of a complex chemical substance for the purpose of enabling one to understand its nature or to determine an essential feature; or if it determines what elements are present in a chemical substance.

62 Cust. Ct. at 685, 300 F.Supp. at 458; *accord John H. Faunce, Inc.* v. *United States,* 64 Cust. Ct. 491, 494, C.D. 4024 (1970).

---

[9] 3 Customs Co-operation Council, *Explanatory Notes to the Brussels Nomenclature* 1213–1215 (2d ed. 1966) (*Explanatory Notes*). Permutit and zeolite are both ion-exchange media. *The Condensed Chemical Dictionary,* 597, 841, 1186 (Rose 5th ed. 1956). The evidence established that ion-exchange media is one of the chromatographic media used with the merchandise.

[10] Defendant's expert witness, Walter A. Svec, characterized the merchandise as an analytical instrument or apparatus by defining the term "analysis" to mean "separation" of a chemical into component parts. *See* Transcript at 146–47:

Q. (Atty. for defendant): I would like to read to you the following definition which appears in the Funk and Wagnalls New Standard Dictionary of the English Language. "Analysis, 1. the resolution of a compound into its parts or elements; the act of ascertaining, separating, or unfolding in order, the elements of a complex body, substance, or treatise. Chemical analysis is either (1) qualitative or (2) quantitative. Physical analysis is the resolution of any physical object or substance into its parts. Qualitative a., the process in chemistry of finding out how many and what elements are present—quantitative a., the process of finding the bulk or amount of each element present."

Do you agree with that definition?

A. (Mr. Svec) Yes.

Q. Does that definition . . . apply to chromatographic liquid—liquid column chromatography?

A. Yes; that's the reason I consider it an analytical method.

The Court finds more persuasive the testimony of Dr. Leslie C. Beadling and Dr. Fred E. Regnier, plaintiff's experts, who testified that the merchandise does not perform chemical or physical analysis, as they understand those terms. Ronald Goldberg, a sales manager, testified that his customers did not use the columns for analytical purposes.

The articles held classifiable under item 711.88, TSUS, were chiefly used to perform or facilitate physical or chemical determination of the quantity, qualities, or composition of a substance. The parties have stipulated that the articles in this action are chiefly used for filtering or purifying liquids. The Court has found that the purpose of the filtering or purifying is to obtain a pure material that may be used, sold, or studied.

Defendant's contention that the merchandise is specifically described under item 711.88, TSUS, is based primarily on *E.M. Laboratories, Inc.* v. *United States,* 80 Cust. Ct. 125, C.D. 4744 (1978), where the Court found thin layer chromatography plates (TLC plates) properly classified under item 711.88, TSUS. Defendant argues that the articles in this action function in the same manner as TLC plates.[11]

But the Court in that case found that the purpose of the TLC plates was to separate materials for analysis. By contrast, the merchandise in this action prepares materials for a variety of uses requiring purified substances. Also, the issue before the Court in *E.M. Laboratories* was whether the plates were classifiable under item 711.88, TSUS, or under item 547.55, TSUS, as laboratory glassware. The Court could not consider whether the TLC plates were classifiable under item 661.95, TSUS, as "filtering or purification" devices.[12]

Defendant also relies on *John H. Faunce, Inc.* v. *United States, supra.* The merchandise in *Faunce* was an optical diffractometer[13] which allows a visual comparison of the atomic structure of a crystal, to reveal its physical and chemical properties. Rejecting plaintiff's claim that the apparatus did not perform "analysis", the Court in *Faunce* held that:

> a detailed examination takes place which enables the scientist to understand [a crystal's] essential features and to obtain much valuable information concerning other physical and chemical properties * * *

64 Cust. Ct. at 495. The Court noted that plaintiff's expert witness testified that the diffractometer "in conjunction with the human factor, performed an analysis" and that the "trade literature describes the apparatus as one *for crystal structure analysis* and other research application.'" 64 Cust. Ct. at 495 n.3 (emphasis in original).

---

[11] The TLC plates at issue in *E.M. Laboratories* consisted of sheets of glass to which a silica gel adsorbent layer was permanently affixed. A substance is applied on the adsorbent layer, and separated into components when the plate is placed in a vessel containing a solvent which rises through the adsorbent layer. The plates are then subjected to dyes, other solutions, or light rays, "thereby permitting an identification of the separated substances and their component elements." 80. Cust. Ct. at 127 (footnote omitted).

[12] No claim could have been made that the plates were properly classifiable under item 661.95, TSUS, since Headnote 1(iv) of Schedule 6, Part 4 prohibits classification of articles of glass in that part.

[13] A diffractometer is an apparatus consisting of a lamp, prism, three lenses, light filter, mirror and a black card punched with holes.

Unlike a diffractometer, the merchandise in this action provides no information regarding the chemical or physical properties of a substance. The user obtains a purified substance.

Finally, defendant argues that the *Summary of Trade and Tariff Information,* USITC Public. No. 841, Control No. 7–2–30 (1983), indicates a Congressional intent that the imported merchandise is classified in item 711.88, TSUS. Item 711.86, TSUS, is essentially unchanged since enactment in 1962.[14] *Summari es* published after the enactment of the tariff item under consideration are "poor indications of Congressional intent." *Daw Industries, Inc.* v. *United States,* 714 F.2d 1140, 1142 (Fed. Cir. 1983). "They are not part of the legislative history of a prior act nor are they the interpretation of the agency empowered to apply the act and therefore have little, if any, weight in determining the meaning of prior statutory language." *Volkswagen of America, Inc.* v. *United States,* 68 Cust. Ct. 122, 129, C.D. 4348, 340 F.Supp. 983, 989 (1972), *aff'd per curiam,* 61 CCPA 41, C.A.D. 1115, 494 F.2d 703 (1974).

To summarize, the Court finds that the merchandise is chiefly used for filtering and purifying liquids to obtain pure materials for industrial or commercial use. The Court holds that plaintiff has overcome the presumption of correctness that attaches to Customs' classification:[15] the merchandise is not specifically classified under item 711.88, TSUS, as "instruments or apparatus for physical or chemical analysis"; the Brussels Nomenclature persuasively indicates that Congress intended that merchandise chiefly used for filtering or purifying liquid is classifiable under item 661.95, TSUS.

Judgment will be entered accordingly. So ordered.

▮

▮

---

[14] Defendant also argues that the articles comprise "parts" of instruments or apparatus for physical or chemical analysis, item 711.88, TSUS. Defendant argues that "whether the columns themselves perform chemical or physical analysis is of no moment." *Brief for the United States, Defendant,* at 13.

But the applicability of a tariff provision for "parts" is controlled by chief use, *E.R. Hawthorne & Co.* v. *United States,* 730 F.2d 1490, 1491 (Fed. Cir. 1984), and the stipulated chief use of the articles is for filtering and purifying liquids.

[15] This presumption does not apply to the columns and adaptors classified under item 680.22, TSUS, since defendant has abandoned that claim. *See United States* v. *Magnus, Mabee & Reynard, Inc.,* 39 CCPA 1, 7, C.A.D. 455 (1951).